IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT EVANS | ) | |
| | ) | |
| vs. | ) | C.A. No. 07-227ML |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, Assistant U. S. Attorney, and objects to petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255 for those reasons stated in the accompanying memorandum.

Respectfully submitted,

Robert Clark Corrente
United States Attorney

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1670
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July 2007, I served a copy of the within Government's Objection To Petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255, ordinary mail and postage prepaid, to:

Robert J. Evans
No. 05360-070
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1670
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROBERT EVANS | ) | |
| | ) | |
| vs. | ) | C.A. No. 07-227ML |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Introduction

Petitioner Robert Evans (Evans) files this motion pursuant to 28 U.S.C. § 2255. The petition is signed under penalty of perjury. Evans makes the following arguments: 1) officers unlawfully entered and searched his apartment from which they seized substantial quantities of cocaine powder and crack cocaine; 2) officers used as a justification to approach and arrest Evans, an arrest warrant for making threatening and harassing telephone calls purportedly signed by Rhode Island State District Judge Michael Higgins but which was not in fact signed by Judge Higgins; 3) the written consent to search his apartment, obtained from his "spouse" Patricia Vicente, was invalid; 4) defense counsel was ineffective for failing to object to Evans' career offender classification; and 5) defense counsel was ineffective for failing to object to the use of "crack" cocaine Sentencing Guidelines calculations.

Travel

On October, 22, 2003, a federal grand jury in the District of Rhode Island returned a two-count indictment against Evans charging that on or about June 5, 2003 Evans possessed with intent to distribute in excess of 50 grams of cocaine base (crack),

in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and that on or about June 5, 2003 Evans possessed with intent to distribute in excess of 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Pursuant to a written plea agreement signed April 13, 2004, Evans entered guilty pleas to both counts on April 19, 2004. In the agreement, the Government agreed to recommend that the Court impose the lowest term of imprisonment under the applicable Sentencing Guidelines range, or the mandatory minimum term of imprisonment by statute, whichever was greater. The Government agreed to recommend a two or three-level decrease for acceptance of responsibility, which ever was applicable. The Government further agreed not to file a sentencing enhancement information pursuant to 21 U.S.C. § 851.

The Pre-sentence Report (PSR) classified Evans as a career offender. (PSR ¶ 23) A defendant is classified as a career offender if he is at least 18 years old at the time he committed the instant offense; the instant offense is a crime of violence or drug trafficking offense; and the defendant has at least two prior countable felony convictions for either a crime of violence or a drug trafficking offense. U.S.S.G. §§ 4B1.1 and 4B1.2. The probation officer identified three qualifying prior convictions: a 1993 conviction for assault with intent to commit murder (PSR ¶ 34); a 1994 conviction for felony assault with a dangerous weapon (PSR ¶ 39); and a 1997 conviction for manufacture/delivery of a controlled substance (PSR ¶ 41). Evans' base offense level was set at 37 because of his career offender status. With a three-level decrease for acceptance of responsibility, his total offense level was set at 34, with a criminal history

category of VI. (PSR ¶¶ 25 and 42) His Sentencing Guidelines range was 262-327 months imprisonment. (PSR ¶ 68)

Sentencing was held on March 17, 2005. The Court sentenced Evans to 262 months in prison, five years supervised release, and a $200 special assessment. Evans appealed his sentence to the First Circuit Court of Appeals. Evans' appellate counsel filed an Anders v. California, 386 U.S. 738 (1976), brief. Evans filed two letters which the Court treated as a supplemental pro se brief. The Court dismissed the appeal after finding there were no issues justifying an appeal. United States v. Evans, C.A. No. 05-1466.

Ineffective Assistance of Counsel

The two-part test for evaluating ineffective assistance of counsel claims was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668,687-688 (1984). A defendant must show both: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that he was prejudiced as a result of his attorney's deficient performance. Id.; Mathews v. Rakiey, 54 F.3d 908, 916 (1st Cir 1990). The Defendant's burden is by a preponderance of the evidence.

With regard to the first element, "[c]ounsel's judgment is subject to highly deferential review," United States v. Gomes, 177 F.3d 76, 83 (1st Cir. 1999) and "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The defendant must establish that counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). The court should indulge in a "strong presumption that counsel's conduct falls within a

wide range of reasonable professional assistance." Singleton, 26 F.3d at 238 (quoting Strickland, 466 U.S. at 689).

Prejudice exists when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694; Gonzalez-Soberal v. United States, 244 F.3d 273 (1st Cir. 2001).

Strickland applies not only to trials, but to guilty plea challenges. Under the first prong, the defendant must show that his counseled guilty plea was based on advice which is outside the range of competence demanded of attorneys in criminal cases. To establish prejudice, the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial. Lopez-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).

Moreover, even if a defendant is able to show that counsel's error affected the outcome of his case, he is not necessarily entitled to reversal. The Supreme Court has made clear that a prejudice analysis "focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). A Court should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." Id. at 369-70. Rather, reversal is warranted only if a Court also concludes that the result of the trial was "fundamentally unfair or unreliable." Id. at 369; accord Tejeda v. Dubois, 14 F.3d 18, 22 (1st Cir. 1998); Carey v. United States, 50 F.3d 1097, 1101 (1st Cir. 1995); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

Counsel need not jump through every conceivable hoop, nor engage in futile exercise, in order to be considered effective. Singleton, 26 F.3d at 239; United States v. Cronic, 466 U.S. 649, 656 n. 19 (1984).

Argument

1. The Evidence Seized From 140 Mineral Spring Avenue, Pawtucket

Evans argues that the evidence seized from 140 Mineral Spring Avenue, Pawtucket was illegally seized by the police. Evans claims the following: On June 5, 2003, he shared a third floor apartment at 140 Mineral Spring Avenue with his spouse, Patricia Vicente. Police officers came to the apartment to arrest him on a misdemeanor warrant. Evans opened the door to the apartment, and officers asked him to step outside. Confirming that officers did not have a search warrant, Evans forbid the officers from searching his apartment without a search warrant. Evans closed the door to the apartment. After being taken into custody, Officer Dolan entered Evans' apartment, conducted an illegal search, and seized drugs inside of a Gap clothing store shopping bag on top of the kitchen counter. (Petitioner's Mem., p. 2)

The facts recited at the change of plea hearing and in the PSR Prosecution Version section paint a somewhat different picture. Subsequent to the arrest of Patricia Vicente and the seizure of approximately one-half kilogram of cocaine, at approximately 1:30 p.m. police officers went to the third floor apartment of 140 Mineral Spring Avenue to arrest Evans. Police were aware that an arrest warrant for making harassing telephone calls had been issued for Evans. As officers reached the top of the stairs, Evans was exiting the apartment. He was carrying a bag. Evans dropped the bag inside of the apartment at the entrance. Evans was told he was under arrest, and he initially followed police commands. Evans then bolted past the officers and ran down the stairs out of the dwelling. One officer reached into

the apartment and seized the bag. It contained 123.78 grams of "crack" cocaine, 176.0 grams of powder cocaine, and $12,000 cash. Evans was arrested in the rear yard of 72 Mineral Spring Avenue. On his person was $3,627.15. From an apartment connected to Evans at 75/77 Trenton Street, Pawtucket, police seized an additional 794.52 grams of cocaine powder. (PSR ¶ 9; T. 4/19/2004, pp. 19-21)

Evans does not develop any claim that his plea of guilty was made involuntarily. Nor does he allege that he suffered from ineffective assistance of counsel in deciding to plead guilty. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea of guilty. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973). See also, United States v. Valdez-Santana, 279 F.3d 143, 145 (1st Cir. 2002); United States v. Cordero, 42 F.3d 697, 698-99 (1st Cir.1994); Acevedo-Ramos v. United States, 961 F.2d 305, 308 (1st Cir. 1992); Gioiosa v. United States, 684 F.2d 176, 179-80 (1st Cir. 1982). Evans therefore is precluded from raising this issue in a § 2255 petition.

Further, even if the Court were to consider his claim, his 2007 version of the facts is flatly contradicted by his statements made under oath to this Court at his change of plea hearing on April 19, 2004. After the government recited the facts, as described above, which it would prove if the matter were to proceed to trial, (T. 4/19/2004, pp. 19-21), the change of plea colloquy continued, in part, as follows:

THE COURT: Is there anything that Mr. Madden said that you wish to correct?

THE DEFENDANT: No, your Honor.

THE COURT: In other words, all of the statements that he's made here today describing what happened that day and where the drugs were and so on and so forth is true?

THE DEFENDANT: Yes, your Honor. (T. 4/19/2004, p. 22)

Evans fails to show, under the facts to which he freely admitted while under oath, that the police illegally seized evidence. This ground should be denied.

2. The Threatening And Harassing Telephone Calls Warrant

Evans argues that the arrest warrant relied upon by police to go to 140 Mineral Spring Avenue, Pawtucket and to arrest him contained an “invalid signature that 'supposedly' was signed by … judge Michael Higgins.” (Petitioner's Mem.) Presumably, it is Evans' contention that no warrant actually existed and that the police forged the signature of State District Judge Michael Higgins.

Evans' argument is fatally flawed. First, as noted above, by pleading guilty, Evans waived claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea of guilty. Further, the arrest warrant and affidavit submitted by Evans as an exhibit, which he claims is a forgery, is certified by the Rhode Island Supreme Court Judicial Records Center as a photographic reproduction of the original. Further, Evans provides no record support that the police officers represented that they had obtained the arrest warrant from Judge Higgins. Finally, Evans provides no affidavit or certification by State District Court officials that the signature on the arrest warrant is not that of Judge Higgins

nor of any other Judge or Magistrate of the Rhode Island State Courts authorized to issue such warrants.

This ground should be denied.

3. The Consent To Search By Patricia Vicente

Evans essentially claims that police cannot rely upon Patricia Vicente's written consent to search the apartment as justification for entering the apartment. He attaches copies of Vicente's written rights waiver form and her written consent to search form. The consent to search form was executed at 1:30 p.m., though Evans claims the search was conducted at 1:15 p.m. In a rambling argument, Evans appears to claim that the rights waiver form was signed at 1:35 p.m., but that this time was later written over to reflect 1:25 p.m. once police officers realized the need to cover up an illegal search.

Of interest only to the extent that it further bears on Evans' credibility, Evans describes Patricia Vicente as his "spouse." (Petitioner's Mem., p. 2) During his pre-sentence interview, Evans reported he was never married, and was only "involved" with Ms. Vicente. (PSR ¶¶ 57 & 59) Further, as noted above, by pleading guilty, Evans waived claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea of guilty. Further, at the change of plea colloquy, one of the facts to which Evans agreed was that the police arrived at 140 Mineral Spring Avenue at approximately 1:30 p.m. Finally, Evans provides no affidavits, documentation or other evidence which contradict the record and demonstrate that the facts are as he now claims.

This ground should be denied.

4. Counsel's Failure to Object to Prior Convictions

Evans argues that his counsel was ineffective because counsel failed to object to certain PSR errors. Evans states that two of the three prior convictions relied upon to establish Evans' status as a career offender were wrongly described in the PSR and were in fact convictions for offenses which were not qualifying prior convictions. He does not dispute that the sentences as described in the PSR are in error

As previously noted, in the PSR, the probation officer identified three qualifying prior convictions: a 1993 conviction for assault with intent to commit murder (PSR ¶ 34); a 1994 conviction for felony assault with a dangerous weapon (PSR ¶ 39); and a 1997 conviction for manufacture/delivery of a controlled substance (PSR ¶ 41). Evans claims that the conviction described at PSR ¶ 39 was for possession of a firearm and that the conviction described at PSR ¶ 41 was for simple possession of cocaine.

Other than his statements, which are contradicted by the PSR, Evans has provided no documents or other information supporting his claims. One step Evans could have taken within the past two years was to obtain certified copies of the Judgments or other court records applicable to these state convictions evidencing that his contentions were correct. One can only assume that he did not do so because the records would not support his claims. Counsel should not be expected to make arguments devoid of record support. At the very least, under an ineffective assistance of counsel analysis, Evans cannot show prejudice.

This ground should be denied.

5. Failure to Object to “Crack” Cocaine Enhancement

Evans argues that his counsel was ineffective in failing to object to "crack" cocaine as the ultimate basis for his sentence. Evans claims that the government did not establish that

the substance seized from the defendant was actually “crack" cocaine and not some other form of cocaine base. His argument is baseless.

Evans' sentence was not based upon a "crack" cocaine determination. By statute, for possession with intent to distribute in excess of 50 grams of cocaine base, conviction carries a mandatory minimum of 10 years imprisonment with a maximum term of life. For a career offender, where the offense of conviction carries a maximum term of imprisonment of life, the Sentencing Guidelines offense level is 37. For this offense level to be triggered, it matters not whether the substance involved in the offense of conviction is "crack" cocaine or some other controlled substance having specific quantity thresholds as long as the maximum term of imprisonment by statute is life. By entering a guilty plea to the offense stated in Count I, whether the substance involved was "crack" cocaine or some other form of cocaine base, Evans faced a maximum sentence of life.

Evans argues that the report of the Rhode Island Forensic Laboratory "came back 'negative for crack cocaine,' and positive of cocaine base only." (Petitioner's Mem., p. 9). Evans misrepresents what the report states as the quoted language, "negative for crack cocaine," is never used or implied in the report. “Crack” is a street term used to describe a form of cocaine base. U.S.S.G. § 2D1.1(c) n. (D). It is not a scientific term. The chemist/analyst tests the substance for the presence of cocaine base. If cocaine base is present in the analyzed substance, a witness, such as a police officer, then renders an opinion whether the cocaine base substance has the texture and appearance of "crack" cocaine as that term is used "on the street." See, United States v. Robinson, 144 F.3d 104 (1st Cir. 1998). The fact that the laboratory report did not mention crack cocaine was not only irrelevant, it was scientifically proper.

Finally, in yet another poor attempt to mislead the Court, Evans fails to advise the Court of his own multiple admissions that the substance which was the subject matter of Count I was "crack" cocaine.

Evans pleaded guilty to Count I which charged that he "did knowingly and intentionally possess with intent to distribute in excess of fifty (50) grams of a mixture and substance containing a detectable amount of cocaine base (crack), a Schedule II Controlled Substance; In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)."

He signed a plea agreement which stated at paragraph 3:

> 3. Defendant agrees that the substance involved in Count I is cocaine base, also known as "crack" cocaine, and agrees that the total weight of the "crack" cocaine is 123.78 grams. Defendant agrees that the substance involved in Count II is cocaine, and agrees that the total weight of the cocaine is 970. 52 grams. Defendant further agrees that the government could prove these facts beyond a reasonable doubt.

At his change of plea hearing, Evans agreed that the statement of facts which the Government would prove were true, (T. 4/19/2004, p. 22), including the following statements:

- "The detective examined the bag and found that it contained two bags of cocaine powder and two bags of crack cocaine." (T. 4/19/2004, p. 20)

- "It is the opinion of the law enforcement officers involved in this investigation that the cocaine base was crack cocaine . . ." (T. 4/19/2004, p. 21)

Further, when the Court asked Evans whether he admitted "that on June 5, 2003, here in the District of Rhode Island, that you had in your possession the quantities of crack and cocaine powder that Mr. Madden described", he answered "Yes." (T. 4/19/2004, p. 21)

Finally, Evans raised no objection to the Prosecution Version, PSR ¶ 9, which restated the exact same facts as those put forth at the change of plea hearing.

Evans neither shows that his counsel was deficient nor that he suffered from prejudice. This ground should be denied.

Conclusion

The petition should be denied. Judgment should enter for the United States.

Respectfully submitted,

Robert Clark Corrente
United States Attorney

/s/ Kenneth P. Madden

Kenneth P. Madden
RI Bar No. 1680
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)

Nathaniel W. Kennedy
Law Student

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July 2007, I served a copy of the within Government's Memorandum In Support Of Its Objection To Petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255, ordinary mail and postage prepaid, to:

Robert J. Evans
No. 05360-070
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

/s/ Kenneth P. Madden
Kenneth P. Madden
RI Bar No. 1670
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5001 (fax)